21459. CITY OF CHAMBLEE v. VILLAGE OF NORTH ATLANTA.

518

ARGUED NOVEMBER 14, 1961—DECIDED JANUARY 8, 1962.

*Carl T. Hudgins,* for plaintiff in error.

*T. B. Higdon, Wm. F. Lozier, Eugene Cook, Attorney-General,* contra.

GRICE, Justice. The Village of North Atlanta brought suit against the City of Chamblee following the enactment of legislation (Ga. L. 1952, p. 2618) purporting to annex additional territory to the City of Chamblee. North Atlanta attacked the constitutionality of that legislation and sought a declaration that the territory in question lay within its corporate limits instead of those of Chamblee, and also sought an injunction against Chamblee's exercise of any municipal jurisdiction over that area. To the petition as amended Chamblee interposed numerous demurrers and an answer. Asserting several grounds of defense, Chamblee's answer denied the validity of North Atlanta's charter and its claim to the territory in dispute and prayed for a decree that North Atlanta had no legal existence whatever and that Chamblee, not North Atlanta, had jurisdiction over the area in question. North Atlanta subsequently demurred and moved to strike that answer. The Judge of the Superior Court of De-Kalb County overruled Chamblee's demurrers, sustained those of North Atlanta, struck Chamblee's answer, and rendered judgment on the pleadings in favor of North Atlanta. Error is assigned here upon those rulings.

The issues of law fall into these categories: (1) the validity of North Atlanta's charter; (2) the constitutionality of the 1952 annexation statute (Ga. L. 1952, p. 2618); and (3) the lapse of time in bringing the present suit. These issues reoccur in Chamblee's answer and demurrers and in North Atlanta's demurrer and motion to strike Chamblee's answer. We shall treat them in the order enumerated.

■ By attacking the validity of North Atlanta's charter, Chamblee challenged North Atlanta's right, as plaintiff, to maintain this suit. The attacks were directed at alleged discrepancies in the proceedings of North Atlanta's incorporation in 1924 and at the constitutionality of the incorporation statute. They urge that the requirements of the act of 1872 (Ga. L. 1872, pp. 16-23) and Section 685 of the Code of 1895 (codification of the act of 1872) were not complied with, and that Georgia Laws 1874, pp. 44-46, as well as the above-mentioned act of 1872 and Sections 685, 686, and 687 of the Code of 1895, were unconstitutional; and also that the description of the territory included in the charter was void.

(a) As to compliance with the requirements of the act of 1872, the alleged discrepancies include such matters as lack of required freeholders living in the area of incorporation, insufficient number of applicants for the charter, and an incorrect date. Attack on North Atlanta's charter on the basis of these features is foreclosed by *MacDonell v. Village of North Atlanta*, 216 Ga. 559 (2) (118 SE2d 460). There, this court ruled that such charter having been granted by the Superior Court of DeKalb County on January 15, 1924, "any attempt to go behind this charter as to alleged discrepancies in dates and the failure to meet conditions precedent to the issuance of the charter can not be considered at this late date, and no collateral attack will be allowed . . . [citing *Code* §§ 2-8005 and 3-702 and decisions of this court]."

(b) The objections urged as to non-compliance with a specified section of the Code of 1895 likewise can not be considered at this late date. The reasoning of *MacDonell v. Village of North Atlanta*, 216 Ga. 559, supra, quoted above, also applies to the 1895 Code.

(c) As to the constitutionality of the acts of 1872 (Ga. L. 1872, pp. 16-23) and 1874 (Ga. L. 1874, pp. 44-46), this court ruled in the *MacDonell* case, 216 Ga. 559 (1), supra, that North Atlanta was incorporated under authority of the Code of 1895, §§ 685 through 710, and thus, the attack upon North Atlanta's charter based on the alleged unconstitutionality of these acts is not meritorious. Therefore, the grounds raised here as to the constitutionality of the acts of 1872 and 1874 can not be considered.

(d) The instant case, however, goes a step further than the *MacDonell* case, 216 Ga. 559, supra, and attacks the Code of 1895 itself, particularly sections 685, 686 and 687. It is contended that these sections violate (1) the due-process clauses of the Federal and State Constitutions because of their lack of provision for contesting the incorporation proceedings, hearing objections, contesting the election provided for therein, and appealing from the order of incorporation; and (2) that they violate the equal-protection guaranties because of exclusion of females as petitioners for incorporation.

These attacks cannot be considered. The rule is well established that in order to raise constitutional questions, a party must show not only that the alleged unconstitutional feature injures him and deprives him of a constitutional right but he must also establish that he himself possessed the right allegedly violated. He must be within the class of persons affected by the statute objected to.

Chamblee, not possessing any such rights as it claims the above sections violate, does not have standing to raise these constitutional objections to the incorporation of North Atlanta. Any such rights were possessed, not by Chamblee, but by private individuals who resided in the area, in this instance (1) those citizens who may have desired to oppose the incorporation, and (2) those female citizens who may have wished to join as applicants to obtain the incorporation.

The fact that Sections 685 through 710 of the Code of 1895 were not later codified in the Code of 1910, which was in effect in 1924, did not result in their repeal. Cf. *McCaffrey v. State*, 183 Ga. 827, 831 (189 SE 825); *Newcomb v. Niskey's Lake*,

190 Ga. 565, 569 (10 SE2d 51). Nothing appears in the Code of 1910 to warrant or suggest repeal by implication. Repeal did not occur until express action by the legislature (Ga. L. 1939, p. 329), and this did not operate retroactively.

(e) The attack upon the description of the territory appearing in North Atlanta's charter proceedings likewise fails because of the *MacDonell* case, 216 Ga. 559, supra. The same description was held valid there against the identical objections made here.

Thus, North Atlanta's charter is not subject to the attacks made upon it in the instant case and therefore, as a legal entity, it is a proper party plaintiff here.

■ We come now to the basis of North Atlanta's cause of action against Chamblee, the alleged unconstitutionality of the 1952 annexation statute (Ga. L. 1952, p. 2618). North Atlanta, among other grounds, contends that this act violates article 3, section 7, paragraph 8, of the Constitution of 1945 (*Code Ann.* § 2-1908), because it refers to more than one subject matter and contains matter different from that expressed in the title.

These issues are likewise controlled by a recent decision of this court. *Schneider v. City of Folkston,* 207 Ga. 434 (62 SE2d 177).

In that case the controversy was over legislation purportedly annexing certain territory into the corporate limits of the City of Folkston by removing it from the Town of Homeland. The grounds of attack there were the same as here—that the act referred to more than one subject matter, and contained matter different from that expressed in the title. In that act the title was merely ". . . to amend the charter of the City of Folkston . . . [giving its county and State]; repealing all existing laws in conflict with the same, and for other purposes." Yet, in the body of the statute, the terms purported to add to Folkston territory which, as appeared upon the face of the statute, lay within the corporate limits of Homeland. Upon review this court held that "It is not competent for the General Assembly in one act to amend, repeal, or modify the charters of two separate and distinct municipal corporations, and to attempt to do so causes the act to refer to more than one subject-matter." It also ruled that no reference being made in the title of the act to Homeland or its charter and the body of the act

undertaking to repeal, modify, or nullify Homeland's charter, the act contained matter different from that expressed in its title

The act under attack in the case at bar is quite similar. Its title refers only to amending the charter of the City of Chamblee "so as to annex additional territory lying adjacent to the present corporate limits of said municipality, and to extend the jurisdiction of the City of Chamblee over said annexed territory"; to authorize Chamblee to contract and to expend public funds for improvements; and "for other purposes." Yet in the body of the act, by section 1, it purports to amend Chamblee's charter by annexing to it described territory which actually lies within the corporate limits of North Atlanta. That North Atlanta is not expressly mentioned in the act is of no consequence because annexing a part of its territory would have the same effect. This act, as did the one in the *Folkston* case, 207 Ga. 434, supra, purports to amend the charters of two municipalities by subtraction and addition, respectively, of territory. Request to overrule the *Folkston* case is denied.

The 1952 act complained of violates the constitutional prohibitions of article 3, section 7, paragraph 8, of the Constitution of 1945 (*Code Ann.* § 2-1908).

■ Lapse of time does not defeat this action.

(a) Laches can not be invoked against North Atlanta. The effort here to attribute them is as to the proof of facts relating to compliance with the procedural requirements for grant of its charter, and to the sufficiency of the description of its territory. Neither of these matters is a germane issue, under the rulings heretofore made in this opinion, and can not be the subject of laches.

(b) Nor is this suit precluded by the five-year dismissal statute (Ga. L. 1953, Nov.-Dec. Sess., pp. 342, 343; *Code Ann.* § 3-512). That act provides as follows: "From and after the passage and approval of this Act, any suit filed in any of the courts of this State in which no written order is taken for a period of five years the same shall automatically stand dismissed with costs to be taxed against the party plaintiff. For the purposes of this bill an order of continuance will be deemed an

order. All suits which are pending upon the effective date of this Act shall automatically stand dismissed five years from the date of the approval of this Act unless an order shall be taken therein as provided above."

The penalty for the inaction specified in this statute is the dismissal of the action with costs taxed against the plaintiff. The dismissal is not res adjudicata so as to conclude, adversely to the plaintiff, the cause of action itself. To give it such construction would be to add a consequence not enacted and would contravene *Code* § 3-508, which provides that a dismissal is not conclusive of the plaintiff's right of action. The legislature's intention, as we view it, was to remove from trial courts those cases whose continued pendency only clutter the dockets.

Upon dismissal pursuant to *Code Ann.* § 3-512, a party desiring to pursue the litigation may refile, provided the cause of action is not then barred by some statutory limitation or by laches. The refiling here was effectual. There is no statute of limitation applicable to this type of action, one which attacks a statute seeking to take away land from the territory of one municipality and add it to another.

Our dismissal statute is similar to those of many other jurisdictions. See in this connection, annotation in 112 ALR 1158, particularly page 1166. The construction given in the case at bar is consistent with that generally, for instance Atchison, T. & S. F. Ry. Co. v. Rollaway Window Screen Co., 101 C.A.2d 763 (226 P2d 763, 765).

There is no merit in the defendant's contention that the action is not maintainable since it is not shown that the plaintiff has paid the costs of the first suit. The requirement of *Code* § 3-508 that the plaintiff pay the costs upon recommencement applies to voluntary dismissal by the plaintiff, not dismissal for want of prosecution, as here. *Rumph v. Truelove,* 66 Ga. 480. Furthermore, the cases are uniform that failure of a recommencing plaintiff to pay costs, where required, must be asserted by plea in abatement, which was not done here. *Code Ann.* § 3-512 does not militate to the contrary.

Neither is it required that refiling be within six months from expiration of the five-year period, or that all the parties of the first suit be included in the second, as is contended here.

Thus, lapse of time, considered from any of the foregoing standpoints, is no defense to this suit.

■ The foregoing issues of law control the outcome of this case, as no germane issues of fact remain. Accordingly, the trial judge's disposition upon the pleadings alone was authorized and required. It was proper for him to overrule Chamblee's demurrers to North Atlanta's petition as amended, the grounds of demurrer being encompassed in and covered by the subject matters in the preceding divisions of this opinion. Also, for the same reason, it was proper for him to sustain North Atlanta's pleadings which were designated as demurrers and motion to strike Chamblee's answer, and thereupon to render judgment in favor of North Atlanta.

Reference in the order to North Atlanta's demurrers and motion to strike as general and special demurrers and to the judgment rendered upon the pleadings as a summary judgment is of no consequence. North Atlanta's pleadings thus ruled upon were directed at several specified paragraphs of the answer and also to the answer as a whole, attacking the legal sufficiency of each on specified grounds. It challenged the substance, not the form, of Chamblee's answer as constituting no issuable defense in part or in whole and served as a motion to dismiss, which under repeated rulings was timely. The sustaining of it settled all of the issues in the case and made appropriate the rendering of judgment upon the pleadings in favor of North Atlanta.

*Judgment affirmed. All the Justices concur.*