## UNITED STATES v. 550.6 ACRES OF LAND IN CHATTOOGA COUNTY, GA.
### (HICKS et al., Interveners).
#### Civil Action No. 329.

District Court, N. D. Georgia,
Rome Division.

Sept. 10, 1945.

M. Neil Andrews, U. S. Atty., of Atlanta, Ga., and Slaton Clemmons, Sp. Asst. U.S. Atty., of Rome, Ga., for the United States.

Elijah A. Brown, of Atlanta, Ga., and Graham Wright, of Rome, Ga., for defendants.

RUSSELL, District Judge.

This case by agreement of the parties was submitted to the court for trial and determination without the intervention of a jury.

The United States Government condemned a tract of land in Chattooga County, Georgia, for a part of a forestry preserve, and in the petition Miss Shropshire, as executrix, and Mrs. Glass were named as ostensible owners, but reference was also made to the likelihood of some claim or interest on the part of the intestate of Mrs. Nellie Norman Hicks, as administratrix, who now appears as a claimant as administratrix of the estate of Elizabeth Peddy. The value of the tract, as fixed by the jury, was paid into court, and the proper disposition thereof is the matter to be determined.

The claimants, Miss Shropshire, as executrix, and Mrs. Glass, seek to establish their title, and thus their right to the fund, by virtue of a sheriff's deed which issued in 1901 following a levy and advertisement had by virtue of a tax execution issued by the tax collector of Chattooga County against the lot of land involved, as wild land, which had not been returned for taxes. Such rights as these claimants have are held by regular conveyances from the purchasers at the sheriff's sale, and they insist that they have shown title as well as prescriptive possession for more than seven years under color of title, if the sheriff's deed be determined not to convey actual title.

Mrs. Hicks, as executrix, claims the fund upon the assertion of title in her intestate as the grantee in an original grant from the State of Georgia to Elizabeth Peddy issued in 1836.

Upon the trial the claimants, Shropshire and Glass, tendered in evidence a certified copy of a deed dated March 7, 1838, apparently executed by Elizabeth Peddy and conveying the property in dispute to William Powell. Admission of the deed was objected to by the other claimant upon the ground that claimant Shropshire had

theretofore interposed an affidavit of forgery when a claimed successor in title through William Powell had intervened in this proceeding and contested with Miss Shropshire the right to the funds. The deed was admitted subject to the objection and for later determination, with the right given to introduce in evidence the affidavit of forgery claimed as a basis of estoppel against Miss Shropshire. This affidavit of forgery has apparently been misplaced and has not been tendered, but the court having had the matter before him in another proceeding, may properly consider it as a part of the record.

Claimant, Hicks, as administratrix, insists that the tax execution and sheriff's deed thereunder are void because under the law as it existed in 1901, the date of the execution and deed, tax executions against wild land could only be issued by the tax receiver, therefore the one now in question issued by the tax collector was without authority of law and afforded no basis for the Sheriff's sale. Counsel relies upon the case of Barnes v. Carter, 120 Ga. 895, 48 S.E. 387. It is further contended that the deed would avail the claimants, Shropshire et al., nothing as color of title for the reason that no sufficient possession was shown as a foundation for the establishment of prescriptive title. Counsel for the claimant, Shropshire, insists that the administratrix of Elizabeth Peddy is not entitled to the fund for the reason that outstanding title in a third person, William Powell, is shown by the deed above referred to.

It is concluded that the respective parties are correct in their attack upon the claim of the other, and that neither of the present claimants show right or title to the funds asserted as just compensation for the lot of land involved.

In an instance such as the present, where contesting claimants seek to secure the award of funds on deposit in the court as just compensation for a lot of land condemned by the United States Government, such claimants occupy the dual role of both plaintiff and defendant; plaintiff in the assertion of their own rights, and defendant in the contest with the opposing claimant. I agree with the conclusions ex-

pressed by Judge McDowell in United States v. Hoblitzell, D.C., 2 F.Supp. 832, that the duty of the court is to consider the conflicting claims in the light of all the facts presented and award the funds to the claimant showing right and title to the land, considering the funds as standing in the place of the land, and with the rights thereto weighed as if the right and title to the land were in issue as of the time possession thereof was acquired by the Government in the condemnation proceeding. It follows that in those infrequent and unusual cases where neither claimant shows right or title to the funds, the money should remain subject to the control of the court for disbursement to the proper claimant, when and if he should appear. In the event no such claimant should appear, any further disposition of the fund in accordance with other provisions of law governing unclaimed funds, would not properly be a matter of concern to any claimants such as the present, who are unable to establish their right to the money.

█ The case of Barnes v. Carter, 120 Ga. 895, 48 S.E. 387, clearly establishes that, in the period between the adoption of the Georgia Code of 1895 and the passage of the Act of 1904, Acts 1904, p. 53, which changed the officer authorized to issue tax executions against wild lands from the tax receiver to the tax collector, a tax execution issued against wild lands which were unreturned by the tax collector, was void, and that a sheriff's deed executed pursuant to a sale by virtue of such tax execution was void and conveyed no title. Claimant Shropshire's contention that the issuance of the tax execution and sale was authorized by the provisions of section 908, now section 92-8103, of the Political Code of 1895, as a cumulative method for the sale of wild land to that provided by section 821 of the Political Code of 1895, now section 92-7403, can not be sustained. While section 908 is not referred to in the decision in Barnes v. Carter, 120 Ga. 895, 48 S.E. 387, 388, the court in asking the question of whether the authority granted the tax receiver by section 821 was exclusive, asks also whether the tax collector could nevertheless, under the Act of 1882, "or other sections of the Political Code, also issue tax executions of this kind." This question is answered in the negative upon the ground that section 821 was, so far as it related to unreturned wild land, "exhaustive of the legislative intent on the subject." The clear and inescapable implication of this decision is that the provisions of section 821 was the only method by which unreturned wild land could be sold. However the decision in the 120th Georgia was rendered upon the second appearance of Barnes v. Carter in the Supreme Court of Georgia. On its first appearance, 114 Ga. 886, 887, 40 S.E. 993, 994, Mr. Justice Cobb, speaking for the court, determined in effect that in case of wild land section 908 was "to be looked to for no other purpose than to ascertain the manner of sale," and the discussion makes it clear that the court did not consider that the provisions of that section authorizing the issuance of tax executions by the tax collector had any application to the collection of taxes on wild land. Furthermore, in the first appearance of the case, 114 Ga. 886, 887, 40 S.E. 993, in the second headnote there appears this: "Quaere: Since the adoption of the Code of 1895, does the duty of issuing executions against wild lands which have not been returned for taxation devolve upon the 'receiver of tax returns,' instead of the 'tax collector'?" and as stated in that decision, section 908 of the Code is expressly considered. The quaere was answered emphatically by the subsequent decision in the 120 Ga. 895, 48 S.E. 387, even if without reference to section 908, or the former decision. Nevertheless, the same counsel appearing, it can safely be assumed that the former decision was brought to the attention of the court. Incidentally, the decision in the 114 Ga. 886, 40 S.E. 993, supra, contains a discussion of the various statutes and code sections relating to the taxation of wild lands, and further conclusively establishes that at the time of the issuance of the tax execution now in question, the exclusive method of collection of taxes upon unreturned wild land was that provided by section 821. Therefore the sheriff's deed is not properly admissible as title, and consequently no actual title is shown in these claimants.

The claimants, Shropshire and Glass, fail to prove seven years notorious, adverse and continuous possession under color of title, either in their behalf or any of their predecessors in color of title. Consequently, such claimants fail to establish title or right of title or ownership in either method provided by law, and their claim to the funds standing in lieu of the land must fail.

In their capacity as defendants in contesting the claim of Mrs. Hicks as administratrix, claimants Shropshire and Glass are not estopped from introducing in evidence the conveyance of title from the testator of such administratrix to William Powell, so as to show outstanding title in a third person and defeat her claim, by having tendered in another intervention an affidavit of forgery to that conveyance. Hobbs v. McLean, 117 U.S. 567, 6 S.Ct. 870, 29 L.Ed. 940; 19 Am.Jur. section 73, p. 709. No effort was made to show that the administratrix of Elizabeth Peddy was in any way prejudiced by, or suffered any change of position or rights as a result of the filing of such affidavit of forgery. She was not a party claimant at the time, and is a stranger to that proceeding. It appears that there was never any final determination of the question, as the intervenor against whose claim the affidavit was filed withdrew her claim. Furthermore, the affidavit of forgery provided by the Georgia law to be filed where the execution of a deed is denied, Georgia Code 1933, § 29-415, is in effect only a special pleading by which the factum of a deed may be determined in a special proceeding. Haithcock v. Sargent, 145 Ga. 84, 88 S.E. 550. Except for casting the burden of establishing the genuineness of the deed upon the party tendering it, the special plea is in effect no more than any other defense, for even though no affidavit of forgery be filed, if the defendant in his plea denies the execution of the deed, evidence is nevertheless admissible which tends to show that the deed is forged and fraudulent. Wilkinson v. Dix, 151 Ga. 605, 107 S.E. 844; Anderson v. Cuthbert, 103 Ga. 767, 30 S.E. 244; Knight v. Suddeth & Crenshaw, 126 Ga. 231, 55 S.E. 31. Thus in practical effect, the tendering of such an affidavit of forgery may be no more than the assertion of inconsistent defenses, and such assertions do not create estoppels as against third parties.

The deed in question shows title conveyed by the claimant's intestate to a third person, and thus outstanding title in such person. According to the certified copy of the deed dated March 7, 1838, the property is described as being in "formerly Cherokee now Chattooga County," and claimant Hicks directs the court's attention to the fact that Chattooga County was not created until December, 1838. As stated above, the land had been granted to Elizabeth Peddy by the State of Georgia in 1836. The deed was not recorded until 1925. However in the absence of any other evidence of forgery, or under circumstances raising a question as to the genuineness of the deed, I am not convinced that the statement of the date as March, 1838, prior to the creation of the county in which it is said to lay in December of that year, is in and of itself sufficient evidence of forgery. March 7th is near the change of the year and this might have caused the erroneous statement of the year. It also appears to be a reasonable supposition that the deed might have been executed by the grantor, who lived many miles from the location of the land, on one date, and the description subsequently inserted therein at another. In other words, as stated, the mere fact that the deed bears the date anteceding by a few months the creation of the county in which it is said to lay, does not impel a finding of forgery, no other circumstances appearing.

Considering the contest over the fund as in the nature of a contest for land, the opposing contestants are entitled to show outstanding title in a third person without connecting themselves therewith. Guthrie v. Gaskins, 171 Ga. 303, 155 S.E. 185, and cases cited.

From what has been said above, it follows that neither of the claimants have shown any right to the funds now in the custody of the court, and accordingly their respective interventions should be, and the same hereby are, dismissed.